Smale, Respondent, vs. Wrought Washer Manufacturing Company, Appellant.

*March 4—March 23, 1915.*

*Workmen's compensation: Injury to employee through tort of third person: Liability: Negligence: Contributory negligence: Excessive damages.*

1. As between an employer and his employees the remedies provided in the Workmen's Compensation Act are exclusive when both are subject to the act at the time of the accident; but such act

does not in any way abridge the remedies which an employee of one person may have at law against a third person for a tort which such third person commits against him, unless it be in a case such as is provided for by sec. 2394—6, Stats. 1913.

2. An electrician in the employ of another company, while doing some wiring for defendant in its shop, was injured by a traveling crane. It had been agreed by defendant that he should work on the track of the crane and should be notified by the craneman in case of danger. He had worked during the morning of one day and had been notified when it was necessary to get out of the way of the crane. He was not upon the track during that afternoon, but while working there on the following morning was run down by the crane without warning. *Held*, upon the evidence, that it was a question for the jury whether the failure to warn him was negligence, and also whether he was guilty of contributory negligence in not notifying the craneman before going upon the track on the second day.

3. For serious and permanent injuries to an electrician forty-four years of age and earning $85 to $95 per month, involving terrible laceration and crushing in the region of the lower part of the spine, intense and long continued pain and mental anguish because of permanent and offensive physical weaknesses, an award of $12,000 is sustained.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

Action for personal injuries. The plaintiff in September, 1913, was an employee of the Andrae Electrical Company, and as such employee was sent to the shop of the defendant corporation on the morning of the 8th of said month to install some new telephones and telephone wires in the shop to take the place of certain apparatus of the same nature which had recently been removed. The shop is a long building extending from east to west and consists of one large room open to the roof, on the floor of which the operations of the factory are carried on. For the purpose of moving materials on the floor of the shop a large traveling electric crane is maintained, the bridge of which (thirty-one feet above the floor) spans the shop from north to south, and is supported at each end by trucks and wheels running on steel railway tracks which are

attached to the north and south walls of the building and run
the entire length of the shop.    There is a steel ledge or shelf
on which these tracks rest, wide enough for a man to stand on
and work upon, but not wide enough to afford room for a man
to stand if the crane moves past him.    The cage in which the
craneman is stationed to operate the crane hangs just below
the bridge near the north wall and the craneman faces south-
east as he handles the levers.    From his position he can look
up and see the tracks on which the bridge runs and see a man
working on the ledge if the man be ten or twelve feet distant
from the bridge.    Ordinarily, however, he is not expected or
required to watch the track, as it is not expected that anybody
will be on the ledge.

When *Smale* came to the shop on the morning in question
he was directed to the general foreman of the shop, one Gilder,
who showed him where the work was to be done and turned
him over to the house electrician, Junn, with whom the plaint-
iff discussed the manner of doing the work and the place
where the cables and wires might conveniently be strung.
They decided that it would be best to run the main wire along
the north side of the building on the steel ledge or shelf which
supports the track, drawing it up tight to the wall behind the
track with insulating tape.    As this plan would make it nec-
essary for the plaintiff to work upon the track, it was decided
that Mr. Junn should notify the craneman that there was go-
ing to be a man working on the track and that he must look
out for him.    After giving the craneman this notification
Junn returned to the plaintiff and told him that it was all
right now and he could go ahead.    The plaintiff worked on
the ledge during most of the morning and was notified by the
craneman when it was necessary to move the crane so as to
interfere with the plaintiff's work, on which occasions the
plaintiff got out of the way until the crane moved back again.
The plaintiff's work continued during the afternoon, but did
not call him up on the track.    On the following day, however,

he was obliged again to go up on the track.   While he was at work the crane ran him down, crushing him between the trucks and the wall, and inflicting very serious and permanent injuries.

The jury returned a special verdict finding that (1) there was want of ordinary care on the part of the craneman which was the proximate cause of the plaintiff's injuries; (2) there was no want of ordinary care on plaintiff's part which proximately contributed to his injury; and (3) plaintiff's damages were $12,000.

Judgment for the plaintiff being entered on this verdict, the defendant appeals.

For the appellant there was a brief by *Stuart H. Markham* and *Morris & Canright,* and oral argument by *C. E. Canright.*

For the respondent there was a brief by *Schmitz, Wild & Gross,* and oral argument by *A. J. Schmitz.*

WINSLOW, C. J.   It appeared that both the Andrae Company and the defendant had prior to this accident elected to become subject to the provisions of the Workmen's Compensation Act (secs. 2394—1 to 2394—31, Stats.), and the defendant's first claim is that on account of this fact the defendant is not liable to an action at law.   The claim cannot be sustained.   The purpose and effect of the Workmen's Compensation Act is to control and regulate the relations between an employer and his employees.   As between them the remedies there provided are exclusive when both are under the act at the time of the accident.   The law does not attempt in any way to abridge the remedies which an employee of one person may have at law against a third person for a tort which such third person commits against him, unless it be in a case such as is provided for by sec. 2394—6, Stats. 1913 (ch. 599, Laws of 1913).   The present case does not come within that section and hence it is unnecessary to consider its effect.   The principal contentions of the defendant are that it should have

been held as matters of law (1) that there was no negligence on the part of the defendant and (2) that there was contributory negligence on the part of the plaintiff.

Neither of these claims can be sustained. There was ample evidence to show that the defendant, through an employee designated by the foreman for the purpose of making the necessary arrangements for the plaintiff's work, agreed that the plaintiff should work on the track and should be notified by the craneman in case of danger. He was not notified, and it was clearly a question for the jury whether the failure to notify him was negligent. If such failure was negligent, its proximate relationship to the accident cannot admit of doubt.

Just as clearly the question whether the plaintiff was guilty of contributory negligence was for the jury. It is quite probable that a very careful man would have himself notified the craneman when he went up on the track on the second day, but we cannot say as matter of law that the man of ordinary care would have done so.

The final claim made is that the damages are excessive. The plaintiff was an electrician forty-four years of age and earning at the time of the accident $85 to $95 per month. Were his pecuniary loss the only consideration, we should have no hesitation in holding that the damages were excessive. But there are other very serious and persuasive considerations. The plaintiff was terribly lacerated and crushed in the region of the lower part of the spine and the buttocks; there was a comminuted fracture of the spine, the sphincter muscles of the rectum torn and lacerated, the rectum itself separated from the spine, and for weeks he suffered intense pain; at the time of the trial the inner sphincter was partly healed, but the outer one is still open and probably never will heal; there are still three openings or sinuses discharging pus; he has little control of the bowels, has to wear a pad all of the time on account of the discharges from the backbone, is unable to sit down as he should, and after he is up from one to

two hours is afflicted with backache which continues until he lies down again. He has been able to do nothing at his trade since his injury. Necessarily he must be an unwelcome guest anywhere and will suffer mental anguish on account of his offensive physical weaknesses until the end of his life.

We should have been better satisfied had the jury found a less sum as damages, but we feel unable to pronounce them excessive.

*By the Court.*—Judgment affirmed.